[Nos. 2396, 2397, 2401]

COUNTY OF PERSHING, W. C. PITT, J. T. GOODIN, H. J. MURRISH, JOHN A. JURGENSON, C. L. YOUNG, AND J. H. CAUSTEN, PETITIONERS, *v.* THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF HUMBOLDT, AND HONORABLE T. C. HART, DISTRICT JUDGE THEREOF, PRESIDING, RESPONDENTS.

STATE OF NEVADA, EX REL. COUNTY OF PERSHING, PETITIONER, *v.* T. P. EBERT, A. F. TROUSDALE, AND J. I. PETERSON, AS COUNTY COMMISSIONERS OF THE COUNTY OF HUMBOLDT, STATE OF NEVADA, RESPONDENTS.

ZOE PALMER ODEN, RESPONDENT, *v.* JOHN I. PETERSON, T. P. EBERT AND A. F. TROUSDALE, AS THE BOARD OF COUNTY COMMISSIONERS OF HUMBOLDT COUNTY, STATE OF NEVADA; J. W. DAVEY, AS COUNTY CLERK OF SAID HUMBOLDT COUNTY; F. GERMAIN, AS COUNTY AUDITOR OF SAID HUMBOLDT COUNTY; AND F. G. HOENSTEIN, AS COUNTY TREASURER OF SAID HUMBOLDT COUNTY, APPELLANTS.

[181 Pac. 960 ; 183 Pac. 314]

1. COUNTIES—CREATION, EXISTENCE, AND CHANGE—LEGISLATIVE CONTROL.
    Since a county is called into existence by the legislature, and therefore is its creature, its territory may be cut up in parcels by the legislature, and its common property and common burden apportioned in such manner as the legislature may deem reasonable and equitable, or its existence as a county may be blotted out, all even against the will of its inhabitants.

2. STATUTES—LAW TO TAKE EFFECT ON CONTINGENCY—POWER OF LEGISLATURE.
    The legislature has power to pass a law to take effect on a contingency expressed in the body of the law; and may designate such contingency as a vote of the people of the territory affected by the law.

3. COUNTIES—FORMATION OF NEW OUT OF OLD—REFERENDUM—CONSTITUTION—"IN AND FOR."
    Stats. 1919, p. 75, creating and organizing the county of Pershing out of a portion of Humboldt County, is not a local

law "in and for" Humboldt County, making necessary referendum to the voters of such latter county under Const. art. 19. sec. 3, providing the referendum powers are reserved to the electors of each county as to all local legislation in and for the respective counties.

4. STATUTES — TITLE — ORGANIZATION OF COUNTY — CONSTITUTIONALITY.

Stats. 1919. p. 75, organizing the county of Pershing out of a portion of Humboldt County, and certain of its provisions, *held* not unconstitutional on the ground that such provisions are not embraced by the title, the disputed provisions being incident to the complete organization of the county, and germane to the main object of the act.

5. STATUTES—PARTIAL INVALIDITY—EFFECT.

Unless the validity of a whole statute depends on the constitutionality of one or more provisions not germane to the title, or are so blended with the scope and purpose of the act as a whole as to affect its validity or any other of its provisions, the invalidity of one or more of such provisions does not defeat the general scope and purpose of the act.

6. CONSTITUTIONAL LAW—DETERMINATION OF CONSTITUTIONAL QUESTIONS.

The constitutionality of statutory provisions should not be passed upon until some right dependent on the particular provision is brought before the court for adjudication.

7. CONSTITUTIONAL LAW—RIGHT TO QUESTION STATUTE.

One not prejudiced by the enforcement of a statute cannot question its constitutionality or obtain decision as to its validity on the ground it impairs the rights of others, so that a county from whose territory another is formed by the legislature cannot question the validity of the formative statute in its provisions designating officers of the new county, etc.

## ON PETITION FOR REHEARING

1. APPEAL AND ERROR—REHEARINGS.

Rehearings in the supreme court are not granted as a matter of right. and are not allowed for the purpose of reargument, unless there is reasonable probability that the court may have arrived at an erroneous conclusion.

2. COUNTIES—CHANGE OF BOUNDARIES—CONSOLIDATION OR CREATION.

Unless a limitation exists in the constitution, the power of the legislature is absolute. by general or special statutes, to provide change of boundaries, division, addition, consolidation of existing counties, or the creation and organization of new counties.

3. CONSTITUTIONAL LAW—DIVISION OR CREATION OF NEW COUNTY.

The whole matter of the division of counties and the creation of new ones is in its nature political, and not judicial, and belongs wholly to the legislative department of the government.

4. STATUTES—REFERENDUM—CONSTRUCTION.
　　In construing the referendum as applied to legislation for counties, the usual rules of construction are applicable; the the thing to be sought being the thought expressed.
5. CONSTITUTIONAL LAW—COUNTIES—VESTED RIGHTS—BOUNDARIES OF COUNTIES—RIGHTS OF INHABITANTS.
　　The inhabitants of a county have no vested rights as far as the boundaries of the county or the extent of its territory are concerned, and the same may be changed without their consent.

APPEAL from Sixth Judicial District Court, Humboldt County; *E. F. Lunsford,* Judge.

Petition for writ of prohibition by the County of Pershing and others against the Sixth Judicial District Court and others, and petition for mandamus by the State of Nevada, on the relation, etc., against Tom P. Ebert and others and suit by Zoe Palmer Oden against John I. Peterson and others, resulting in an injunctive order, from which defendants appeal. **Alternative writ of prohibition made permanent and peremptory, writ of mandate directed to issue, and injunctive order affirmed.**

On petition for rehearing, **former opinion adhered to.**

*Moore & McIntosh* and *Norcross, Thatcher & Woodburn,* for Petitioners:

The district court of one county has no jurisdiction to enjoin the officers of another county from performing their official functions. Such an assumption of power would be an unlawful interference with both the legislative and executive branches of the government. Const. Nev. arts. 3, 6; State v. Dickerson, 33 Nev. 540; Wallace v. Reno, 27 Nev. 71; Gibson v. Mason, 5 Nev. 284; Osborn v. Bank, 22 U. S. 866; In Re Estate of Sticknoth, 7 Nev. 236; State v. Ormsby County, 7 Nev. 392; Ex Parte Blanchard, 9 Nev. 101; Ex Parte Darling, 16 Nev. 98; Esmeralda County v. District Court, 18 Nev. 438; State v. Wildes, 116 Pac. 595; State v. Arrington, 18 Nev. 412. A court cannot assume allegations of the unconstitutionality of a statute to be true. Rev. Laws, 5142. The right of public officials to perform the duties

of their several offices cannot be attacked collaterally. 29 Cyc. 1416.

Only such laws or resolutions as pertain "to such county only" can be submitted to a referendum vote. The act in question pertains to Pershing County as well as to Humboldt County. Immediately upon the approval of the act creating the county of Pershing, it became a county as much as any other county in the state. Leake v. Blaisdel, 6 Nev. 43; Clark v. Irwin, 5 Nev. 111; Hooten v. McKinney, 5 Nev. 194. Such an act as the one in question can be submitted to the electors of the entire state only. State v. Brodigan, 37 Nev. 37. The legislature only has power to enact legislation authorizing the submission of "local, special and municipal legislation" to counties or municipalities. Const. Nev. sec. 3, art. 19.

A county is an integral part of the state for governmental purposes. Const. Nev. arts. 4, 8, 15, 18; 15 C. J. 388; 7 C. J. 923; Sacramento County v. Chambers, 164 Pac. 613; Hersey v. Milson, 47 Mont. 132; News Co. v. Grady County, 161 Pac. 207; Madden v. Lancaster County, 65 Fed. 188; People v. Johnson, 34 Colo. 143; Laramie County v. Albany County, 92 U. S. 307; Cons. Ice Co. v. City, 49 N. E. 713; Schweiss v. District Court, 23 Nev. 226. The creation of new counties is not among the powers of a board of county commissioners. Ann. Cas. 1916B, 820; Hopping v. Richmond, 150 Pac. 977.

*R. M. Hardy,* District Attorney of Pershing County, for Petitioners:

The power to create counties, to alter the boundaries of those in existence, to provide for their government and for the general regulation of their affairs, is inherently and exclusively in the legislature. Const. Nev. sec. 1, art. 4.

The creation of new counties, the changing of county boundaries, and the making of all provisions germane and pertinent thereto, by legislative enactment, is not

only by virtue of the authority of the constitution, but it has become the established and recognized system. This system should not be disturbed by the judiciary, except upon the strongest showing of abuse or usurpation of power. State v. Stoddard, 25 Nev. 452; Clarke v. Irwin, 5 Nev. 111; Hooten v. McKinney, 5 Nev. 194; Gibson v. Mason, 5 Nev. 284; Hess v. Pegg, 7 Nev. 23; Evans v. Job, 8 Nev. 322; Youngs v. Hall, 9 Nev. 212; State v. Swift, 11 Nev. 128; Tilden v. Esmeralda County, 32 Nev. 320; State v. Lytton, 31 Nev. 67.

*Warren & Hawkins* and *Thos. A. Brandon* (*Edward F. Treadwell,* of Counsel), for Respondents:

The people of each county have a right to a referendum with respect to any local, special or municipal act of the legislature applicable only to such county. Const. Nev. sec. 1, art. 9; State v. Brodigan, 37 Nev. 37; Rose v. Port of Portland, 82 Or. 541.

While the constitutional provision granting the referendum to counties and municipalities in regard to local, special and municipal legislation is not self-executing, it was put into effect and operation by the act of 1915, and the legislature, irrespective of any such provision in the constitution, had power to confer the right of referendum upon the people of the county affected with respect to such legislation. Stats. 1915, p. 157.

The legislature has power to pass a law to take effect on a contingency, and it may designate that contingency as a vote of the people of the certain territory affected. 26 Am. & Eng. Ency. 567; People v. McFadden, 81 Cal. 489; In Re Pfahler, 150 Cal. 71; Van Dusen v. Fridley, 6 Dak. 622; People v. Raynolds, 10 Ill. 1; Jasper County v. Spittler, 13 Ind. 235. It is customary for the legislature to refer the question of county division to a vote of the people of the county. Trinity County v. Polk County, 58 Tex. 321; Duncombe v. Prindle, 12 Iowa, 2; Reynolds v. Holland, 35 Ark. 56; State v. Nelson, 34 Neb. 162; Wayne Co. v. Cobb, 35 Neb. 231.

The act in question is local, special and municipal, and

applies only to one county. Const. Nev. sec. 3, art. 19; Stats. 1915, p. 157. Even after the act was passed Pershing County did not become an organized county until all its officers were installed. State v. Blasdel, 6 Nev. 40; People v. McGuire, 32 Cal. 140.

The act having been, by the constitution and the statute, passed subject to the referendum, and the referendum having been duly invoked with reference thereto, the operation of the act is suspended thereby. Rigdon v. Common Council, 30 Cal. App. 107; Norris v. Cross, 25 Okl. 287; Stetson v. City of Seattle, 74 Wash. 606; Sears v. Multnomah County, 49 Or. 42; State v. Moore, 103 Ark. 48; Kemper v. Carter, 165 S. W. 773; Commonwealth v. Day, 23 S. W. 193; Akin v. State, 14 Tex. Cr. App. 142.

The act in question is unconstitutional, because it attempts to consolidate the offices of clerk and treasurer and the offices of sheriff and assessor. Const. Nev. sec. 32, art. 4; State v. Douglas, 33 Nev. 82.

Contrary to the constitution, the act embraces more than one subject, and attempts to amend acts which are not referred to in the title. Const. Nev. sec. 17, art. 4; Philbin v. McCarty, 24 Kan. 393; Ballentyn v. Wickersham, 75 Ala. 533. The constitution is mandatory in this particular. State v. Silver, 9 Nev. 226; State v. Rogers, 10 Nev. 250; State ex rel. Drury v. Hallock, 19 Nev. 384.

Where constitutional and unconstitutional provisions of a statute are so inseparably blended as to make it clear that either would not have been enacted without the other, the whole act is void. San Francisco v. S. V. W. W., 48 Cal. 493; Read v. Railroad, 32 Cal. 212; Orange County v. Harris, 97 Cal. 600; Lathrop v. Mills, 19 Cal. 513.

If the provisions of the act regarding the consolidation of officers are unconstitutional, it results that the proper officers of the county have never been appointed, the county never organized, and that these proceedings must be dismissed. State v. Blasdel, 6 Nev. 40; People v.

McGuire, 32 Cal. 140; Commissioners v. Perkins, 38 Pac. 915; Commissioners v. Woods, 106 Pac. 923; Mile v. Kent, 60 Ind. 231; Buckinghouse v. Gregg, 19 Ind. 401.

By the Court, SANDERS, J.:

These cases were argued and submitted as a single case. For convenience we will refer to it as the case of Pershing County against Humboldt County, since it appears that the latter declines to recognize Pershing County as being a legally created and established county of the state.

On March 18, 1919, an act of the legislature was approved entitled "An act creating and organizing the county of Pershing out of a portion of Humboldt County, and providing for its government, and to regulate the affairs of Humboldt County and Pershing County." Stats. 1919, p. 75. On the same day, to wit, March 18, 1919, the governor approved an act entitled "An act to amend sections 16 and 19 of an act entitled 'An act creating and organizing the county of Pershing out of a portion of Humboldt County, and providing for its government, and to regulate the affairs of Humboldt County and Pershing County.'" Stats. 1919, p. 82.

On the change from the territorial to a state government the several counties of the Territory of Nevada were recognized as legal subdivisions of the state. Since that time the legislature has, by special legislative enactments, changed the boundaries of some, consolidated and divided others, until there now exists seventeen organized counties in the state, including the alleged county of Pershing.

Subject in a state only to constitutional limitation, a county is the merest creature of the legislature. It is recognized by the fundamental law of this state as a body corporate. Const. Nev. art. 17, sec. 1.

1. From the legislature a county derives its name, its extent of territory, its mode and manner of government, its power and rights. It is a creature of the legislature. Called into existence by it, and subject to the restric-

tions named, its whole being may be changed by the same power which created it. Its territory may be cut up and parceled out to the other counties; its common property and common burden apportioned in such manner as to the legislature may seem reasonable and equitable; its existence as a county blotted out; and this all against the will of its inhabitants. Vincent v. County of Lincoln (C. C.) 30 Fed. 751; Comrs. of Laramie County v. Comrs. of Albany County, 92 U. S. 307, 23 L. Ed. 552; Board of Comrs. v. City of Osborne (Kan.) 180 Pac. 233; Cooley, Const. (2d ed.) 192; 11 Cyc. 341–345; 7 R. C. L. 923–926.

2, 3. But, if we clearly interpret the position taken by the learned counsel for Humboldt County in these original proceedings, it is their contention that since the enactment of the initiative and referendum by the legislature and its ratification by the people, the fundamental principle that a state through the legislative department of its government may divide the established territory of a county and give to a new county taken therefrom a corporate existence is "local legislation" within the meaning of the referendum clause of the constitution and the act passed in aid of its execution (Const. Nev. art. 19, sec. 3; Stats. 1915, p. 157), and therefore the act creating and organizing Pershing County out of a portion of Humboldt County is reserved by the referendum law to the people of Humboldt County to signify by their votes, at an election called for that purpose, their approval or rejection of the law, and that the referendum having been duly invoked with reference to the law in question, its operation is suspended until the qualified electors of Humboldt County have been given an opportunity to signify their approval of the law. We fully recognize the rule that the legislature has the power to pass a law to take effect on a contingency expressed in the body of the law, and that the legislature may designate that contingency as a vote of the people of the territory affected by the law. 26 Am. & Eng. Ency. Law, 567. This rule is recognized to a certain

extent by this court in the case of Hess v. Pegg, 7 Nev. 28, and was expressly applied by the Supreme Court of California to the division of a county in the case of People v. McFadden, 81 Cal. 489, 22 Pac. 851. But it is manifest from section 20 of the act that it was the intention of the legislature that the act creating and organizing the county of Pershing out of a portion of Humboldt County should become effective immediately, without regard to the will of the inhabitants of Humboldt County. This is a matter for the legislature, and it is not for this court to oppose its judgment to that of the legislature in this important particular. Unless the law be in "clear, palpable and direct conflict with the written constitution," it must be sustained."

Sec. 3, art. 19, of the constitution provides, inter alia:

"The initiative and referendum powers in this article provided for are further reserved to the qualified electors of each county and municipality as to all local, special and municipal legislation of every character in or for said respective counties or municipalities."

We concede, or it must be conceded, that an act creating a new county out of territory of an established county relates to and necessarily affects the latter, but we are unable to bring ourselves to the conclusion that such legislation is a local law "in or for" the county out of which the new county is created. But on the contrary, if it be local legislation, as the term is used in section 3, article 19, of the constitution, it is legislation for the new county of Pershing, and not for the old county of Humboldt.

Counties are of purely a political character, constituting the machinery and essential agency by which free governments are upheld, and through which, for the most part, their powers are exercised. Their functions are purely of a public nature. 11 Cyc. 351.

Whatever may be the literal import of the initiative and referendum amendment to the constitution, it must be construed with others of the organic law. It cannot be construed that the legislature and the people intended

by its enactment and adoption to surrender the sovereignty of the state over a particular portion of its territory to the people who inhabit it. Such interpretation would amount to a recognition of the state's independent right of dissolution. It would lead to sovereigntial suicide. It would result in the creation of states within the state, and eventually in the surrender of all state sovereignty. Hedges, "Where the People Rule," 15–16.

In view of the essential character and nature of a county as it relates to and is connected with the sovereignty of the state, we are of the opinion that the power which the legislature possesses to divide counties and apportion their common burdens is not abridged, limited, restricted or affected by the initiative and referendum, and the law in question is not thereby suspended.

4. It is next insisted and strenuously urged that the special provisions of the act, incident to the organization of the county of Pershing, are within the constitutional prohibition against the enactment of special and local laws and void; as in section 9 of the act it is attempted to consolidate the offices of clerk and treasurer, and the offices of sheriff and assessor; that section 19 of the act is contrary to the general law regarding the apportionment of senators and representatives; that the act purports to divide townships, school districts and election precincts, and makes no provision for township government in that portion of territory falling within Pershing County; that the act contains provisions not embraced by its title, and attempts to amend specific statutes not referred to in the title and which are not reenacted. To discuss these disputed provisions separately would extend this opinion to an unreasonable length. The law concerning them is well settled and has been applied in numerous cases arising out of just such cases as this.

By the very terms of the title of the act the disputed provisions are incident to the complete organization of Pershing County and are germane to the main object of the act.

5. Unless the validity of the whole act depends upon the constitutionality of one or more of these provisions, or that they are so blended with the general scope and purpose of the act as a whole as to affect the validity of the whole act, or any other of its provisions, its validity, if it should be invalid, does not defeat the general scope and purpose of the act. People v. McFadden, supra.

6, 7. Conceding, but not deciding, that one or more of the provisions is against the general law for a uniform system of government for the counties of the state, we ought not in this action to express any opinion as to its constitutionality. "It will be time enough to pass upon it when some right dependent thereon is brought before the court for adjudication." Furthermore, we are of the opinion that the parties respondent have not shown themselves to be in a position to attack the constitutionality of these separate provisions. The rule is well established that one who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality, or obtain a decision as to its invalidity, on the ground that it impairs the rights of others. 6 R. C. L. 89. This rule applies to the position of Humboldt County in this case. We are unable to perceive in what manner the designation of officers of Pershing County and the manner of its organization affects Humboldt County.

Without regard to the constitutionality of the separate and distinct provisions of the act, we are clearly of the opinion that the act as a whole is constitutional. It is therefore ordered that the alternative writ of prohibition heretofore issued be and is hereby made permanent and peremptory; and it is further ordered that the writ of mandate, as demanded, do issue; and the injunctive order appealed from is affirmed.

## ON PETITION FOR REHEARING

By the Court, SANDERS, J.:

1. Rehearings are not granted as a matter of right (Twaddle v. Winters, 29 Nev. 108, 85 Pac. 280, 89 Pac.

289), and are not allowed for the purpose of reargument, unless there is reasonable probability that the court may have arrived at an erroneous conclusion. State v. Woodbury, 17 Nev. 337, 30 Pac. 1006.

In this case we are satisfied that the opinion answers satisfactorily all the points raised in opposition to its conclusions, but, as some question of doubt is raised as to the extent to which the decision goes, we take the liberty of summarizing for the benefit of counsel what is actually decided:

First—A county is a political subdivision of a state, through which, for the most part, its sovereign powers are exercised.

Second—The law creating Pershing County out of a part of Humboldt County is, as a whole, constitutional.

Third—That the said law is not abridged, limited, or restricted by the initiative or referendum clause of our constitution, and that the taking effect of the said law is not thereby suspended.

Fourth—That the completed law is not local, special, and municipal legislation within the meaning of the referendum clause of the constitution that reserves to the qualified electors of a specified county the power to approve or reject at the polls legislation of every character in or for such specified county.

In arriving at these conclusions we applied long-established principles:

2. First—Unless a limitation exists in the constitution of a state, the power of the legislature is absolute, by general or special statute, to provide the change of the boundaries, the division, addition, consolidation of existing counties, or the creation and organization of new counties. This doctrine finds its reason in the "essential nature of counties as political subdivisions of the state and as the creatures of its sovereign will."

3. Second—The whole matter of the division of counties and the creation of new ones is in its nature political, and not judicial, and belongs wholly to the legislative department of the government. Riverside County v. San Bernardino County, 134 Cal. 520, 66 Pac. 788.

4. Third—In construing the referendum as applied to legislation for counties, we applied the usual rules of construction applicable to the construction of laws enacted in the usual way, keeping in mind that "the thing to be sought is the thought expressed" (State v. Doron, 5 Nev. 399), and that it was the duty of this court, if possible, to give to the language of the measure such a construction as to make effective the reservation of power on the part of the people, and not to presume anything from its language that would negative the material inferences that may be drawn from "the people's law." McClure v. Nye, 22 Cal. App. 248, 133 Pac. 1145; Hodges v. Dawdy, 104 Ark. 583, 149 S. W. 656.

From the application of these principles and rules of construction we concluded that the statute creating Pershing County out of the territory of Humboldt County was, as a whole, constitutional, and further held that such act was not of the class of legislation referred to and embraced by the referendum; hence the asserted right of the people of Humboldt County to veto the law creating Pershing County by their ballots became a political question, and this court was without authority to adjudge matters of this kind between the two counties.

Counsel insist that the broad and comprehensive language of the referendum reserves to the people of a county the right to determine whether the act creating a new out of the old should become operative. The principal argument so earnestly advanced in support of this proposition is that it is a "local law" within the meaning and contemplation of the provision of the referendum as applied to counties, and they further insist that the opinion so declared. We do not recede from the declaration that the law is "local" legislation, but not for Humboldt County within the meaning of the word "local" as used in the referendum. The act is "local" legislation, for the reason that a general law could not be made applicable to such cases. Evans v. Job, 8 Nev. 322.

"It is not denied that the legislature has power to erect

a county, that is, to define its territorial limits and boundaries by special act, and thereby to subdivide one or more old counties, because it is said such action is clearly a part of proper legislative power not prohibited, and no general law could in such case be made applicable." State v. Irwin, 5 Nev. 111.

5. Neither do we recede from the declaration that the creation of a new county necessarily affects the territory out of which it is carved; but it does not follow that such a law affects the corporate existence of the old, its government, or its status as a political subdivision of the state. Neither does it destroy or impair its usefulness as a component part of the scheme of state government. It retains all its powers, rights, duties, and privileges, and remains subject to all its duties and obligations to the state, and is in no sense affected, injured, or damaged, except that its dominion and control is reduced to a less area of territory than that formerly occupied, to which its inhabitants, it is conceded, or must be conceded, have no vested right.

Neither do we recede from the declaration made in the opinion (though not material to the issue) that, if any one be entitled to vote on the proposition whether the completed act should become operative, it should be the people of Pershing County. On them especially rest the privileges, responsibilities, and burdens of the new county. People v. Kennedy, 207 N. Y. 533, 101 N. E. 442, Ann. Cas. 1914c, 616. But counsel argue that this reasoning is illogical, because Pershing County at the time the officers of Humboldt County called an election had not been created. If this be so, then why do counsel importune us to protest the political rights of the people of Humboldt County to determine whether the law that created Pershing County should become operative? But they assert that, conceding it to be a completed law, it is a law for Humboldt County. If this be true, we apprehend that the people of Pershing County would be here protesting with equal earnestness and vigor against a judicial recognition of such a law.

We are impressed that the argument of the petitioner is but a play on words. The language of the referendum construes itself. "The thing to be sought is the thought expressed." The primary and culminating thought expressed in the referendum is to reserve to the people of a county the right of referendum of legislation of every character for a county; legislation for "each county of the state"—that is, an established and existing county. Its language clearly shows that the people regarded counties and municipalities as being distinct and independent entities, each performing its duty in the scheme of government to the people it serves. The words "in or for" indicate two sources of legislation for the government of counties—that originating through a law-making body within the county, and that originating in a law-making body without the county. Rose v. Port of Portland, 82 Or. 541, 162 Pac. 498.

The word "for" defines and limits the character of such legislation, whether it emanates from within or without the county. Clearly it must in either case be legislation "for" the county; that is, "with respect to," with "regard to," legislation for its government and exercise. This limitation of power furnishes a strong argument of its existence, and involves necessarily the exclusion of things not expressed. The people themselves having limited their power to affirm or reject legislation "for" a county, it is impossible for us to extend its meaning to include legislation of a strictly political nature and character that concerns the status of the county as a political subdivision of the state, through which the state, for the most part, exercises its governmental powers, legislation of an entirely different character from that of "local" legislation as used in the referendum. It is fair to presume that the people adopted this particular measure, in its limited form, with full knowledge of the inherent power of the state over its territory and the recognized mode and manner followed and pursued by the state with reference to the division and creation of counties from the date of its

organization. It is also not unfair to presume that the people adopted the referendum as it relates to counties with full knowledge that the framers of the constitution did not delegate to the legislature or to the counties of the state its inherent power in the matter of the division and creation of new counties, and that the legislature derives its power and control over territory of the state, not through the organized law, but from the character and nature of our form of government.

In the absence of clear, explicit, and unmistakable language to show that the people reserved to themselves the power to divide counties and establish new ones, together with the power to veto such laws when duly enacted by the legislature, we decline to announce a principle that would tend to undermine what we consider to be a power inherent in a state.

In the case of Gibson v. Mason, 5 Nev. 283, there is an exhaustive and able discussion of the sovereignty of the state as against the sovereignty of the people. It is therein announced that an act of the legislature made dependent upon the people's votes or approval is utterly void. This doctrine has been superseded by the referendum clause of the constitution. It is now held, and the law is so familiar as to render any review unnecessary, that the legislature may delegate to municipalities and restricted localities the right to determine whether they will act under or take advantage of statutes pertaining to such subjects as municipal government and excise. People v. Kennedy, supra.

As stated in the opinion, we are not concerned with the wisdom or policy of the legislative act in question. The legislature had the power to give to electors of the entire county of Humboldt the right of referendum. And the people themselves, when they adopted the initiative and referendum, had they so desired, could have reserved to themselves the option to adopt or reject legislation of the character here in question. But these are matters for the legislature and the people to deal with, and not courts.

The petition for rehearing is denied.

COLEMAN, C. J., concurring:

I concur in the opinion of Mr. Justice SANDERS.

Two purposes were sought to be accomplished by the act attacked in these proceedings. The first was to create Pershing County, and the second to provide the necessary organization for the government thereof. Had an independent act been passed creating Pershing County, which might have been done, as was held in Leake v. Blasdel, 6 Nev. 40, and leaving to a separate and distinct bill the providing for its government, I am unable to see how it could be contended that such an act creating Pershing County would be such "local, special and municipal legislation * * * in and for" Humboldt County as was contemplated by the constitutional amendment in question. In fact, the very argument made by counsel for respondent is inconsistent with any other conclusion. They insist that the act creating Pershing County is within itself a dismemberment of Humboldt County. How, then, can it be said on the other hand that it is an act "in and for" Humboldt County? Their argument is not only inconsistent with the conclusions they seek to have us arrive at, but shows conclusively the weakness of their position. There is a great difference between the creation of a new county and legislating for one already in existence, and such is the chief distinction between the case before us and the one contended for by counsel for Humboldt County. This being true, the mere fact that the act in question contains provisions creating Pershing County, and also provisions incident to the creation of that county and providing for the government thereof, does not change the situation in the least.