[No. 2470]

## IN THE MATTER OF THE WALKER RIVER IRRIGATION DISTRICT.

### PETER HENDRICH, APPELLANT, v. WALKER RIVER IRRIGATION DISTRICT, RESPONDENT.

[195 Pac. 327]

1. APPEAL AND ERROR — WATERS AND WATERCOURSES — JUDGMENT CONFIRMING IRRIGATION DISTRICT'S ORGANIZATION CONCLUSIVE ON LANDOWNERS WHETHER APPEARING OR NOT.

   Party failing to appear and file an answer in irrigation district confirmation proceedings is estopped from questioning the judgments and in no position to draw from the supreme court on appeal therefrom an opinion on questions of fact involving the regularity, validity, and legality of the proceedings, his failure to answer being an admission of the material allegations (Irrigation District Act, sec. 19), and the judgment is conclusive upon landowners whether appearing or not.

2. CONSTITUTIONAL LAW—IRRIGATION DISTRICT ACT HELD NOT TO EXTEND JURISDICTION OF DISTRICT COURT IN VIOLATION OF CONSTITUTION.

   Irrigation district act, secs. 19 and 20, providing for confirmation of district's organization, are not in violation of Const. art. 6, sec. 6, for they do not limit or extend the original jurisdiction of district courts.

3. STATUTES—IRRIGATION DISTRICT ACT HELD NOT TO VIOLATE PROHIBITION AGAINST LOCAL OR SPECIAL LAW AS TO PRACTICE OF COURTS.

   Irrigation district act, secs. 19 and 20, as to proceedings in district court to confirm the organization of irrigation districts,

are general in application and do not violate Const. art. 4, sec. 20, prohibiting local or special laws regulating the practice of courts.

4. STATUTES—IN ADOPTING THE LAW OF ANOTHER STATE THE LEGISLATURE IS PRESUMED TO ADOPT IT AS CONSTRUED.

The legislature is presumed to have knowledge of the state of the law on the subject on which it legislates, and where it adopts the statutes of another state it is presumed to do so in the light of the construction placed on it by the parent state.

5. STATUTES — TITLE TO IRRIGATION DISTRICT ACT HELD NOT TO EMBRACE MORE THAN ONE SUBJECT.

The title to the irrigation district act "to provide for the organization and government of irrigation districts, for the irrigation and drainage of lands and other related undertakings and for the acquisition and distribution of water and other property, construction, operation and maintenance of works, diversion, storage, distribution, collection and carriage of water, cooperation with the United States, and matters properly connected therewith," contains but one general subject, "the organization of irrigation districts," which must be held broad enough and comprehensive enough to include every provision of the act, and is not in violation of Const. art. 4, sec. 17, limiting titles to one subject.

6. CONSTITUTIONAL LAW—WATERS AND WATERCOURSES—IRRIGATION DISTRICT ACT HELD NOT IN VIOLATION OF DUE-PROCESS CLAUSE OF FEDERAL CONSTITUTION.

Irrigation district act, sec. 14, limits the indebtedness which a district may incur to the obligations voluntarily assumed by the landowners, and does not violate Const. U. S. Amend. 14, by permitting confiscation of property by taxation without due process of law.

7. WATERS AND WATERCOURSES—SPECIAL ASSESSMENT NOT STRICTLY A "TAX" AND NOT EMBRACED WITHIN THE WORD "TAXATION."

Special assessments to be levied under irrigation district act, are not "taxes" within the general tax law and are not debts of the individual, but are a lien against the land for its own benefits, not embraced within the meaning of the word "taxation."

8. WATERS AND WATERCOURSES—IRRIGATION DISTRICT ACT HELD NOT UNCONSTITUTIONAL BECAUSE OF PROPERTY LIMITATION UPON VOTERS.

Const. art. 2, secs. 1 and 6, preventing the imposition of a property qualification upon the right to vote, are not applicable to irrigation districts, so that irrigation district act, sec. 8, imposing such a qualification, is not unconstitutional.

9. ELECTIONS—RIGHT TO VOTE IS A POLITICAL PRIVILEGE AND NOT AN INHERENT, UNQUALIFIED PERSONAL RIGHT.

The right to vote conferred by Const. art 2, secs. 1 and 6, is a mere political privilege, and not an inherent, unqualified, personal, or political right.

10. ELECTIONS — CONSTITUTIONAL PROVISION AS TO RIGHT TO VOTE
    CONSTRUED.

    In view of Const. art. 2, sec. 32, providing that the legisla-
    ture shall provide for the election of officers named and others
    necessary, etc., the term "all officers and questions submitted
    to the electors at such election," as used in section 1, giving
    citizens the right to vote for "all officers," etc., refers to the
    election of all officers provided for in the constitution, and
    enumerated pursuant thereto by Rev. Laws, 2765.

11. WATERS AND WATERCOURSES—IRRIGATION DISTRICT ACT PROVIDING
    FOR ELECTIONS NOT VOID BECAUSE REQUIRING PROPERTY QUALIFI-
    CATIONS OF VOTERS.

    The right to vote in elections provided for under irrigation
    district act does not constitute an exercise of the elective
    franchise so as to render the law unconstitutional and void
    because requiring a property qualification.

12. CONSTITUTIONAL LAW — CONSTITUTION MUST BE CONSTRUED
    ACCORDING TO INTENT AND PURPOSE.

    The constitution must be construed according to its pur-
    pose and intent, and the thing to be sought is the thought
    expressed.

13. WATERS AND WATERCOURSES—IRRIGATION DISTRICT ACT HELD NOT
    UNCONSTITUTIONAL AS VIOLATIVE OF THE RESIDENTIAL QUALIFI-
    CATION OF ELECTORS.

    Irrigation district act is not within the spirit of the general
    election law or of Const. art. 2, sec. 1, prescribing residential
    qualifications of electors, since such districts are not political
    subdivisions of the state, or created for political or govern-
    mental purposes; the term "elections" in the constitution being
    used in its restrictive political sense.

COLEMAN, J., dissenting.

APPEAL from Eighth Judicial District Court, Lyon
County; *T. C. Hart,* Judge.

The board of directors of the Walker River Irrigation
District procured a judgment approving and confirming
the district's organization proceedings, and subsequently
procured a judgment confirming the steps taken with
respect to apportionment of benefits, and from both of
these judgments Peter Hendrich, who had not appeared
in either proceeding, appeals. **Affirmed.**

*Waggoner & Waggoner,* for Appellant:

The decrees are void. The act is unconstitutional,
being violative of the Fourteenth Amendment to the
Constitution of the United States, in that there is no

limit upon the amount of the indebtedness that the board of directors may contract. By the use of the taxing power they may take the property of the individual. Further, the act authorizes the imposition of assessments upon property to which no benefits have been apportioned, and which is in no way benefited by the district operations, while other property within the district is entirely exempt from such burdens. Bradley v. Fallbrook, 68 Fed. 948.

The act deprives qualified electors of the right to vote upon matters pertaining to the district, and permits voting by persons not possessing the qualifications of voters generally, in violation of the state constitution. Const. Nev. art. 2, secs. 1, 6.

Irrigation districts are public corporations. Fallbrook v. Bradley, 164 U. S. 112; Herring v. Modesto Irr. Dist., 95 Fed. 705; Turlock Irr. Dist. v. Williams, 76 Cal. 360; Central Irr. Dist. v. DeLappe, 79 Cal. 351; People v. Turnbull, 93 Cal. 630; Quint v. Hoffman, 103 Cal. 506; Perry v. Otay Irr. District, 127 Cal. 565; Little Willow v. Haynes, 24 Idaho, 317; Thompson v. McFarland, 29 Utah, 455.

Irrigation officers are public officers. Fallbrook v. Bradley, supra; Kinney, Irr. & Water Rights, vol. 3, par. 1404; People v. Selma, 98 Cal. 206. As such public corporations, they are governed by the general election laws of the state, including the requirement as to qualifications of voters in the election of directors. Hertle v. Ball, 9 Idaho, 193; Pioneer Dist. v. Walker, 20 Idaho, 605; Handbook Irr. Dist. Laws, King & Burr, 11, and citations. The legislature can add no qualification to those prescribed by the constitution as title to the right of suffrage. 6 Am. & Eng. Ency. 928; Davies v. McKeeby, 5 Nev. 369; Clayton v. Harris, 7 Nev. 64; State v. Findley, 20 Nev. 198; State v. Arrington, 18 Nev. 412; Riter v. Douglass, 32 Nev. 400.

The act is unconstitutional, in that its title embraces more than one subject. Const. Nev. art. 8, sec. 17; State v. Silver, 9 Nev. 227; State v. Rogers, 10 Nev. 253;

Klein v. Kinkead, 16 Nev. 194; State v. Hallock, 19 Nev. 384; State v. Hoadley, 20 Nev. 317; State v. Stone, 24 Nev. 308; Bell v. Court, 28 Nev. 280; State v. Gibson, 30 Nev. 353.

The act violates sections 20 and 21 of article 4 of the state constitution, in that it is a special act regulating procedure in courts of justice. State v. McKinney, 5 Nev. 194; Wolf v. Humboldt Co., 32 Nev. 174; Ormsby County v. Kearney, 37 Nev. 314.

It is violation of section 6 of article 6 of the state constitution, being an attempt to confer on the district court a jurisdiction not authorized by the organic law. People v. Fowler, 9 Cal. 85; Reed v. McCormick, 4 Cal. 342; State v. Rising, 10 Nev. 101.

It is the primal duty of all courts to keep strictly within their jurisdictions. Gamble v. Silver Peak, 39 Nev. 319.

There can be no jurisdiction of any court except under express provision of the constitution that either assigns it or prepares the way for the legislature to do so. People v. McKamy, 143 Pac. 752; Pacific T. & T. Co. v. Eschelman, 137 Pac. 1119; Chinn v. Superior Court, 105 Pac. 580; Marbury v. Madison, 1 Cranch, 137; In Re Evans, 130 Pac. 217.

The words "all other cases," used in the constitution in regard to the jurisdiction of the supreme court and the district court, are not used in the same sense or with the same application. There is no use of the words sustaining the jurisdiction of the district court as provided by the irrigation district law. Const. Nev. art. 6.

The public notices of the hearings upon the respective petitions were insufficient to give the court jurisdiction. Board v. Tregea, 26 Pac. 237. Notice of the presentation of the petition for organization was signed by the county commissioners, and not by petitioners. This is fatally defective. "Nor can the defect in the first notice be cured by proof of actual knowledge upon the part of those to be affected thereby." In Re Central District, 49 Pac. 354.

"To regulate and thus bring into cultivation otherwise worthless land would seem to be a public purpose and a matter of public interest not confined to landowners, or even to any one section of the state." Fallbrook v. Bradley, 164 U. S. 112.

The power of taxation vests exclusively in the legislative department, and cannot be delegated except under the strictest limitations. 37 Cyc. 724. It is a sovereign power, belonging exclusively to the legislative branch of the government. 28 Cyc. 1660; Houghton v. Austin, 47 Cal. 656.

*Hoyt, Norcross, Thatcher, Woodburn & Henley,* for Respondent:

The constitutionality of irrigation district acts, some of them practically identical with the one in controversy, has been repeatedly upheld by the courts of last resort of most of the arid-land states. The Wright act, after which all of the irrigation laws are patterned, has been sustained as constitutional by the Supreme Court of the United States. Almost every conceivable objection to the law has been considered by the courts of the states in which similar laws have been enacted, and almost without exception the law has been held to be constitutional. Fallbrook v. Bradley, 41 U. S. 369; Herring v. Modesto, 95 Fed. 705; Turlock v. Williams, 18 Pac. 379; Central Irr. Dist. v. De Poppe, 21 Pac. 825; Crall v. Poso, 26 Pac. 797; In Re Madera Irr. Dist., 26 Pac. 272; People v. Selma, 32 Pac. 1047; In Re Bonds San Joaquin Irr. Dist., 119 Pac. 198; Bliss v. Hamilton, 152 Pac. 303; Board v. Peterson, 29 Pac. 995; Lundberg v. Green River Irr. Dist., 119 Pac. 1039; Board v. Collins, 64 N. W. 1086.

The law is unquestionably constitutional. All presumptions are in favor of the constitutionality of a statute. Every intendment will be made in favor of the constitutionality of the questioned act. State v. Irwin, 5 Nev. 120; Ex Parte Sticknoth, 7 Nev. 233; Evans v. Job, 8 Nev. 322; State v. Commissioners, 21 Nev. 238;

State v. Westerfield, 24 Nev. 29; Ex Parte Boyce, 27 Nev. 299; Vineyard L. & S. Co. v. District Court, 42 Nev. 1.

The statute is not unconstitutional as affecting the right of qualified electors to vote. Const. Nev., art. 2, secs. 1, 6. These sections apply only to elections provided for by the constitution itself—general and special elections for the selection of officers and the determination of questions concerning the general government and the general welfare of the whole people; and, while the courts have held irrigation districts to be municipal or public corporations, a clear distinction is recognized between them and those established for general governmental purposes. Fallbrook v. Bradley, supra; In Re Madera Irr. Dist., supra; People v. Linda Vista Irr. Dist., 32 Pac. 1047; State v. Hansen, 115 N. W. 294; State v. Monahan, 84 Pac. 130; Mound City L. Co. v. Miller, 70 S. W. 124; Potter v. County, 116 Pac. 1102.

Where the right of suffrage is exercised for limited purposes, constitutional provisions as to property qualifications do not apply, being intended to govern only in elections of general import and significance. State v. Hansen, supra; State v. Monahan, supra; Oregon-Wisconsin T. H. Co. v. Coos County, 142 Pac. 575; Plummer v. Yost, 33 N. E. 191. "The legislature having the unqualified power to provide for the formation of such districts might do so without giving the property owners any voice in the matter at all." In Re Bonds of S. J. Irr. Dist., 119 Pac. 198.

The statute does not violate the constitutional provision that "each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title." Const. Nev., art. 4, sec. 17. There may be included in one act any number of provisions necessary to accomplish the one subject which the law involves. State v. Ah Sam, 15 Nev. 27; Klein v. Kinkead, 16 Nev. 194; State v. Atherton, 19 Nev. 332; State v. Commissioners, 21 Nev. 235; State v. Bank, 31 Nev. 456; Ex

Parte Ah Pah, 34 Nev. 283; Ormsby County v. Kearney, 37 Nev. 314; Nev. Ind. Com. v. Washoe County, 41 Nev. 347; McBride v. Griswold, 38 Nev. 56; Bank v. Nye County, 38 Nev. 123.

The provisions of the act regarding court procedure to obtain decrees are not in conflict with the general law respecting the practice of courts of justice. Const. Nev., art. 4, secs. 20, 21. They are not local or special laws, and are, in every sense of the word, general and public. 36 Cyc. 985; State v. Irwin, 5 Nev. 111; Youngs v. Hall, 9 Nev. 212; State v. Bank, 31 Nev. 456; Worthington v. District Court, 37 Nev. 212.

The act does not contravene the Fourteenth Amendment to the Constitution of the United States. Fallbrook v. Bradley, 41 L. Ed. 369. The law provides for due notice to landowners of each step in the proceedings necessary for the organization of the district and the taxation of their property. This is all that the due-process clause requires; the question of the limit of indebtedness is in no way involved. Ormsby County v. Kearney, 37 Nev. 314; Vineyard L. & S. Co. v. District Court, 42 Nev. 1; Blach v. Glenn, 85 Kan. 735; Enterprise Irr. Dist. v. Tri-State L. Co., 138 N. W. 179; Farm Invest. Co. v. Carpenter, 9 Wyo. 110.

Complainant having offered no proof that his substantial rights have been affected by any omission in the election notice complained of, he has no standing before this court. Baltes v. Farmers Irr. Dist., 83 N. W. 83; O'Neill v. Yellowstone Irr. Dist., 121 Pac. 283; Ells v. Board, 176 Pac. 709.

By the Court, SANDERS, C. J.:

This proceeding was instituted in the district court of Lyon County under sections 19 and 20 of the Nevada irrigation district act (Stats. 1919, c. 64), to secure a confirmation of the organization of the Walker River irrigation district, and the proceedings had in connection therewith for the issuance of $918,500 of its bonds.

The board of directors of the district filed with the

clerk of said court a petition for confirmation, in due form, and thereafter the court fixed a day for the hearing of the petition, and ordered notice to be given and published for the time and in the manner prescribed by the act; and in pursuance to said order notice, in proper form, was given and published. At the time appointed, no person interested answered the petition or interposed any objection thereto whatsoever. Thereupon the court, upon evidence oral and documentary, filed its finding of facts and conclusions of law, and thereafter, to wit, on the 9th day of December, 1919, entered its judgment approving and confirming all of the proceedings for the organization of the district, and for the issuance of $918,500 of bonds of said district, and approved and confirmed all proceedings sought to be confirmed, as set out in the petition.

Thereafter said board of directors filed a petition, in due form, with the clerk of said court, in effect praying for the confirmation of all of the proceedings had in connection with the apportionment of benefits to each subdivision or tract of land, with a list containing a complete description of each subdivision or tract of land in the district, together with the amount and rate per acre of such apportionment and the name of the owner thereof, as provided by the act. Thereupon the court fixed a day for the hearing of the petition and ordered notice to be given and published for the time and place of hearing. No person interested, at or before the time fixed, appeared, and thereafter, on, to wit, the 25th day of June, 1920, the court rendered a judgment ratifying, approving, and confirming each and all of the steps taken and had with respect to said apportionment of benefits, and adjudged the specified and named amounts of benefits so apportioned to each subdivision or tract of land to be regular, legal, and valid.

The appellant appeals to this court from both judgments. The record upon his appeal consists of the petitions and one exhibit purporting to be the apportionment of benefits charged against appellant's lands

within the district, the finding of facts and conclusions of law, and the respective judgments.

Appellant did not appear in either of the confirmation proceedings above referred to, but has filed in this court an assignment of errors that includes and covers an attack upon the constitutionality of the Nevada irrigation district act, the jurisdiction, power, and authority of the district court of Lyon County to examine, hear, and determine the subject involved in said judgments, and the legality and validity of the proceedings had in connection with the organization of the district, and insists that the judgments are absolutely null and void.

1.  If the judgments rendered be judicial decisions, possessing the scope, effect, dignity, and efficacy of the usual and ordinary judgments of courts of general jurisdiction, we are of the opinion that the appellant, by his failure to appear or file an answer in the confirmation proceedings, is estopped from questioning the judgments, and is in no position to draw from this court on appeal therefrom an expression of opinion upon questions of fact involving the regularity, validity, and legality of the proceedings had in the court below to secure a confirmation of all the proceedings settled by the judgments.

His failure to answer the petition is deemed an admission on his part of the material allegations in the petition.  Section 19.

The effect of the judgment as to the proper compliance with the provisions of the act is conclusive upon landowners within the district, whether they appear or do not appear at the confirmation proceedings.  3 Kinney on Irrigation and Water Rights, sec. 1421.

2.  Since it appears affirmatively from the record that appellant has a substantial interest in and is affected by the act, and the subject of its constitutionality is of grave public importance, we feel that those interested in the district and intending purchasers of its bonds should have the advantage of an authoritative decision

in advance upon the legality of the organization of the district and all other proceedings which may affect the legality or validity of its bonds. We shall therefore state our conclusions reached upon the one question, to wit: Is the Nevada irrigation district act constitutional? Stats. 1919, p. 84.

At the threshold of the subject, we are confronted with the proposition that the confirmation provisions contained in the act (sections 19 and 20) are violative of section 6, article 6, of the constitution of this state, in that they attempt to confer upon the district courts jurisdiction not within or contemplated by said section.

Our conclusion upon this proposition is that the confirmation proceeding, as prescribed by said sections, is clearly in the nature of an action in rem; the object being to determine the legal status of the district and its power to issue valid bonds. 3 Kinney on Irr., sec. 1420. The confirmatory procedure neither limits nor extends the original jurisdiction of district courts, as declared and prescribed by the constitution, and is not violative of its letter or spirit.

3. It is further contended that sections 19 and 20 of the act are unconstitutional, for the reason that said sections are in conflict with that part of the constitution of Nevada (sec. 20, art. 4) which provides:

"The legislature shall not pass local or special laws * * * regulating the practice of courts of justice."

If we clearly interpret the position taken by counsel for appellant, it is their contention that the particular provision is a special privilege that is granted to no other public corporation, individual, or association, and is therefore special legislation within the meaning of section 20, article 4, of the constitution. We are not in accord with this position. The sections are general in their application, and were enacted for the purpose of providing for the organization of irrigation districts throughout the state for the reclamation of our arid lands, and the legislature had in view the summary proceedings provided for in the sections for the express

purpose of simplifying the organization proceedings of irrigation districts, and the issuance of its bonds, "which was a very wise public policy of a general and not a special nature." Emmett Irr. District v. Shane, 19 Idaho, 332, 113 Pac. 444.

If the act be constitutional, we are satisfied of the lower court's jurisdiction, power, and authority to render the decrees complained of.

4. We shall now consider the further attacks made upon the constitutionality of the act, which for convenience may be arranged as follows:

(1) The title of the act embraces more than one subject, and matter properly connected therewith. Constitution, sec. 17, art. 4.

(2) The act is violative of the due-process-of-law clause of the Fourteenth Amendment to the Constitution of the United States.

(3) The act is violative of sections 1 and 6 of article 2 of the constitution of this state.

As preliminary to the discussion of these questions, we may remark that, where the constitutionality of district irrigation laws has been attacked upon the grounds stated, they are generally upheld as being constitutional and valid.

The legislature is presumed to have knowledge of the state of the law upon the subject upon which it legislates. Clover Valley L. & S. Co. v. Lamb, 43 Nev. 375, 187 Pac. 723.

It must also be understood that, where the legislature of one state adopts the statute of another, the act of adoption raises the presumption that the legislature of the adopting state enacted the statute in the light of the construction that had been placed upon it in the parent state. O'Brien v. Commissioners, 41 Nev. 90; Ormsby County v. Kearney, 37 Nev. 371.

The history of irrigation district laws in Nevada begins with the statute of 1891, p. 106, and ends with the act under consideration. The substantive parts of

the parent act are modeled upon the irrigation district law of California, commonly known as the "Wright Law" (Stats. 1887, p. 29). The administrative features of the present act include and cover provisions embodied in irrigation district laws of the arid-land states that have received a settled construction, principally the laws of Colorado, Idaho, Oregon, Utah, and Washington. The act being an entirely new act, it is fair to presume that its administrative parts were incorporated as being the latest authoritative expression of the judicial mind, which were presumptively within the contemplation of the legislature.

5.    Counsel have labored arduously to convince us that our constitution and the act itself differ in material respects from the irrigation district laws of other states. This contention imposes upon us the duty of reviewing their several contentions. They insist, as above stated, that the act contains six different subjects not germane to its title.

It must be understood that this court was among if not the first court of the arid-land states to hold, without a legislative declaration upon the subject, that the doctrine of riparian rights is unsuited to the demands and necessities of the agricultural and mining industries of this state and the prosperity of its people. The legislature has declared that "water" belongs to the "public." Nevada was the first of the arid-land states of the Pacific Coast to literally adopt the "Wright Law" of California, upon which all the irrigation district laws of the arid-land states are grounded.

The title of the act under consideration contains but one general subject, to wit, the organization of irrigation districts, which we think is broad and comprehensive enough to include every provision of the act, and we so hold. Anderson v. G. V. Irr. Dist., 35 Colo. 532, 85 Pac. 313; Nampa & M. Irr. Dist. v. Brose, 11 Idaho, 474, 83 Pac. 499; Pioneer Irr. Dist. v. Bradley, 8 Idaho, 310, 68 Pac. 295, 101 Am. St. Rep. 201.

6.  It is urged in the second place that the act is violative of the due-process-of-law clause of the Fourteenth Amendment to the Constitution of the United States, in that no limitation is placed upon the indebtedness which the district may incur, and private property may be confiscated by taxation.  As a general proposition this contention is set at rest by Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369, reversing Bradley v. Fallbrook Irr. Dist. (C. C.) 68 Fed. 948.  And to repeat the opinions of state courts to the same effect would be a work of supererogation.

We are of the opinion that counsel have overlooked, not intentionally, section 14 of the act, which provides:

"The board of directors, or other officers of the district, shall have no power to incur any debt or liability whatever either by issuing bonds or otherwise in excess of the express provisions of this act, and any debt or liability incurred in excess of such express provisions shall be and remain absolutely void.  *  *  * "

The proviso contained in the section permits and limits certain indebtedness not material here.

The power to incur any debt or liability is not unlimited, but is expressly restricted to revenue sufficient to meet the obligations voluntarily assumed by the landowners within the district, as voiced by their votes at elections held for that purpose.  Board of Directors of Alfalfa Irrigation District v. Collins, 46 Neb. 425, 64 N. W. 1086.

The board of directors apportions the amount each year necessary to meet these obligations, and the act provides how collectible, and, when collected, how to be used.

7.  Counsel fail to distinguish between the phrases "assessment of benefits" and "special assessments" to be charged or levied against the land within the district, and the term "tax," as ordinarily used in revenue laws. It is the plan of assessment of benefits and special assessment of benefits required to be carefully ascertained and equitably and fairly apportioned or distributed to the lands within the district as nearly as

can be, that appeals to us as commending the act as a wise public policy. The benefits charged against the lands are presumed to be returned to the owner in its enhanced value. Should a large landowner within the district not see fit to take advantage of the benefits apportioned or distributed to his land, it is reasonable to infer that he will farm out his land to others, and in this way the farming industry of the state will be stimulated, which is the question of the hour in Nevada.

An "assessment" or "special assessment" is not a tax levied upon property according to its value, and is distinguished from the general idea of a "tax," although we concede it owes its origin to the same sources as the taxing power. There is a wide difference in law between a tax and an assessment. In the one case the taxes are assessed against the individual and become a charge upon his property generally. In the other, the assessment, being for the benefits accruing to the specific property, becomes a charge only upon and against it, and liability for the charge is confined to the particular property benefited. Therefore an assessment or special assessment is not embraced within the meaning of the word "taxation," because the owner of the property assessed gets back the amount of his assessment in the benefits received by his property, and therefore does not bear the burden of a tax.

8-11. The principal attack upon the constitutionality of the act remains to be considered. Section 8 thereof reads:

"SEC. 8. Any person, male or female, of the age of 21 years or over, whether a resident of the district or not, who is or has declared his intention to become a citizen of the United States and who is a bona-fide holder of title, or evidence of title, as defined in section 1 hereof, to land situated in the district, shall be entitled to one vote at any election held under the provisions of this act, and shall be held to be referred to whenever the words elector or electors are used herein. Any elector residing outside of the district owning land in the

district and qualified to vote at a district election shall be considered as a resident of that division and precinct of the district in which the major portion of his lands are located for the purpose of determining his place of voting and qualifications for holding office. A guardian, executor, or administrator shall be considered as the holder of title or evidence of title as prescribed in section 1 hereof to the land in the estate for which he is such guardian, executor, or administrator, and shall have the right to sign petitions, vote and do all things that any elector may or can do under this act. Corporations holding land in the district shall be considered as persons entitled to exercise all the rights of natural persons and the president of the corporation, or other person duly authorized by the president or vice-president in writing, may sign any petition authorized by this act or cast the vote of the corporation at any election."

It is asserted that this section is obnoxious to sections 1 and 6 of article 2 of the constitution, in that it imposes a property qualification upon the right to vote within the letter and spirit of the constitution.

Section 1 of article 2 of that instrument, as amended, provides that—

"All citizens of the United States (not laboring under the disabilities named in this constitution) * * * shall be entitled to vote for all officers that now or hereafter may be elected by the people, and upon all questions submitted to the electors at such election. * * * "

Section 6 of said article requires provision to be made by law for the registration of the names of electors, to preserve the purity of elections and their regulation.

The question presented for our determination being one of first impression in this jurisdiction, and one that has given rise to conflicting views and decisions in the courts of the arid-land states whose irrigation district laws impose property and residential qualifications on the right to vote, the subject is worthy of full discussion. Preliminary thereto it is deemed proper to make these observations:

The object of suffrage is the continuity of government and the preservation and perpetuation of its benefits. Cyc. of Political Science, vol. 3, p. 822.

The development of the right of suffrage or voting is a matter more largely of historical than of legal interest.

Suffice it to say that the several qualifications on the right to vote — educational, property, and moral — in force at different times in the colonial period of our history, has, since 1879, been supplanted by the adoption of constitutional provisions by the several states similar to that contained in the constitution of Nevada. The impression widely prevails that these provisions of the constitution place the right to vote in the same category as the right to life, liberty, and property. Many cases have been fought upon this theory. The courts, however, have held with general unanimity (this court being among the number) that the right to vote as conferred by the constitution is a mere political privilege, and not an inherent, unqualified, personal, or political right. Riter v. Douglass, 32 Nev. 400, 109 Pac. 444. This case involved the constitutionality of the primary election law of this state. The court held that section 1, article 4, of the constitution, prescribing the qualifications of electors and guaranteeing their right to vote, applies to the election of public officers, and not to the selection of party nominees. Thus we have a judicial decision of our own, limiting somewhat the phrase "all elections," as used in the section of the constitution under review.

By the weight of authority, the term "all officers" and questions submitted to the electors at such election, as used in section 1, article 2, has reference to the election of all officers provided for in the constitution. Section 32 of article 4 makes provision that the legislature shall provide for the election by the people of certain officers named and "other necessary officers," and fix by law their duties and compensation.

In the exercise of its power the legislature has enumerated what officers shall be elected and appointed. Rev. Laws, 2765.

This court, in the case of State v. Arrington, 18 Nev. 412, 4 Pac. 735, declares that the framers of the constitution and the people adopting it intended that all necessary state, county, and township officers must be elected by the people of the locality immediately concerned. If, then, it can be said that irrigation district officers are not necessary officers in the conduct of the affairs of state, we are unable to perceive in what respect it can reasonably be contended that the term "elections," as used in the constitution, may be extended to include irrigation district officers and elections.

It is manifest that the officers and elections contemplated in section 1, article 2, are only those officers and elections by whose action all of the people within the state or one of its political subdivisions are to be affected. If it may reasonably be said that irrigation districts are political subdivisions of the state, burdened with political and governmental functions to be exercised in running the machinery of the state and local government, there might be some force to the argument that it is a "municipal" corporation. That it is a public corporation, the creature of the legislature, deriving all its powers, rights, and franchises from legislative enactment or statutory implication, is not questioned. Its officers or agents who administer its affairs are created by the legislature and chosen or appointed by the law of its creation. It possesses and can exercise such powers only as are expressly conferred by the law of its creation, or such as are necessary to the exercise of its corporate powers, the performance of its corporate duties, and the accomplishment of the purposes for which it was created. Its purpose is to reclaim privately owned arid lands from a common source, the owner to bear the expense. It has no political function. It does not encroach upon any department of the state, county, or township government. It is a corporate entity of the state, to bring under cultivation its arid lands for the general welfare of the entire state, unconnected with the political government of the locality covered by its operation.

"Others than landowners have no possible interest in the irrigation district, as such, or in its financial management, nor right to a voice in the naming of its officers; and a nonresident landowner has exactly the same interest and responsibility as a resident, and is entitled to the same voice in the direction of its affairs. Districts within this statute can be distinguished from private corporations only by the fact that their organization is compulsory upon those not petitioning for it, and that the expense of maintenance is incurred and a large debt created, which are made liens on the land without the consent of the owner, payment of which must be made by compulsory assessment. No other elements of government or municipal proprietorship are involved." Board of Directors v. Peterson, 64 Or. 46, 128 Pac. 837, 129 Pac. 123.

The district is not established for political or governmental purposes, but as a mere scheme for conducting works of public improvement; and since also the costs of such improvements are made a charge against the lands benefited thereby, the right to a voice in the establishment of the districts, where given by the legislature, is clearly more of a private or property right than a public or political one. Upon principle, therefore, we hold that the right to vote in elections provided for under the statute does not constitute an exercise of the elective franchise so as to render the law unconstitutional and void because requiring a property qualification and permits nonresident landowners to vote.

12. We regard it as an unreasonable inference to suppose that the framers of the constitution ever contemplated that section 1 of article 2 of that instrument was intended to be extended and to apply to irrigation district elections, which is the mere creature of statutory enactment. We are of the opinion that it is only at elections which the constitution itself requires to be held, and officers to be voted for as named in the instrument or created by the legislature as officers necessary

in exercising functions of the government in running the machinery of the state, that section 1, article 2, applies. We are aware that this conclusion conflicts with the decisions in Madera Irr. Dist., 92 Cal. 296, 28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106, and Pioneer Irr. Dist. v. Walker, 20 Idaho, 605, 119 Pac. 304.

We are in accord with the case of Board of Directors v. Peterson, supra, and decline to adopt the conclusion stated in the California and Idaho decisions. Section 8 is patterned largely upon the Oregon statute, 6186 L. O. L. as amended, General Laws 1915, p. 234.

The Oregon court, in the Peterson case, says:

"Although the decisions in Re Madera Irrigation District, 92 Cal. 296 (28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106), and in Pioneer Irrigation District v. Walker, 20 Idaho, 605 (119 Pac. 304), hold to the contrary, we cannot adopt the conclusion stated therein. We believe we are not running counter to section 2, article 2, of the constitution in this conclusion, and a contrary holding would work a great wrong upon the farmers, who may obtain considerable benefit under such an organization, and who, on the other hand, might be burdened by debt beyond the benefits conferred; and its affairs should be left exclusively to those affected thereby."

It is suggested that the Oregon constitution contains the broad provision, "in all elections not otherwise provided for in this constitution," not contained in our constitution, therefore the case of Board of Directors v. Peterson is not controlling. We observe the court does not base its conclusions upon the broad provisions contained in the constitution, but its reasoning is that the California and Idaho courts might have reached a different result upon principle under their constitutions.

In construing the constitution the thing to be sought is the thought expressed. Pershing County v. Humboldt County, 43 Nev. 78, 181 Pac. 960, 183 Pac. 314; State ex rel. Lewis v. Doron, 5 Nev. 399.

It is not questioned but that such instrument must be construed according to its purpose and intent. The object of section 1 of article 2 is obviously twofold: First, to secure to the people the right to select representatives for their government; and, second, to determine the will of the people upon such questions as may be submitted to them.

13. It is urged that irrigation districts are within the spirit and letter of the constitution, and to preclude resident qualified electors therein from voting at the elections provided for under the act is violative of the residential qualification of electors as prescribed in section 1 of article 2 and the general election law. Our answer to this position is that we have endeavored to make it clear that we are of the opinion that such districts are not political subdivisions of the state, or created for political or governmental purposes, and that the term "elections," embraced in section 1, article 2, is used in its restrictive political sense—as election of public officers and to determine the will of the people upon questions in which they have a public, as distinguished from an immediate private interest. Any other interpretation of the intent and purpose of the section of the constitution in question would lead to the absurd result of allowing every qualified elector to insist upon voting at every election, public as well as private, and thus interfere with affairs of others in which he has no interest or concern. It is true the public—the people of the district—are presumed to be interested in the reclamation of its arid lands. Nevertheless, the district is one of those public enterprises which results in a benefit to privately owned lands and, therefore, the cost is by the statute made a lien upon such lands. The land alone is made to bear the charge of the immense cost of its improvement. It is the land that is organized into a district to make it possible for its owners by their combined efforts to bring the same under cultivation through a corporate system, which

but for the helping hand of the constitution, as guided and controlled by the law-making body of the state, possibly could never be accomplished.

"That those who are specially interested and who must pay for the improvement are heard upon the question as to whether it shall be done, and are permitted to appoint those who shall superintend it, is not unusual, nor would it constitute an exercise of the elective franchise." People ex rel. v. Reclamation District No. 551, 117 Cal. 114, 48 Pac. 1016.

Hence, we conclude that the residential requirement of voters, as prescribed in the constitution and the general election law, has no application to irrigation districts as organized under the Nevada irrigation district act.

Being of the opinion that the legislation in question is such as is within the scope of the authority of the legislature to enact, and that the objections here raised against its constitutionality are not well taken, we affirm the judgments appealed from.

DUCKER, J.: I concur.

COLEMAN, J., dissenting:

I am not in accord with all that is said in the foregoing opinion. I am convinced that such projects as contemplated by the statute in question are capable of being productive of much benefit to the state, and I am in sympathy with the idea; but, not being able to concur in some of the views expressed, I am driven to the necessity of dissenting. I could briefly set forth my views, but, as such action would serve no useful purpose, I refrain from doing so.