[No. 2510]

ED. CARVILLE, APPELLANT, *v.* J. A. McBRIDE, MAYOR OF THE CITY OF ELKO; F. T. BRENNEN, J. H. KEYSER, W. R. MAYER, AND W. W. BOOHER, SUPERVISORS OF SAID CITY, AND THE SAID CITY OF ELKO AND THE BOARD OF SUPERVISORS THEREOF, RESPONDENTS.

[202 Pac. 802]

1. ELECTIONS—CITY CHARTER CONSTRUED TO REQUIRE ELECTORS TO BE "TAXPAYERS."

Under section 77, Elko City Charter (Stats. 1917, p. 171), defining "taxpayer" to be a person whose name appears on the official tax roll for the current or year preceding that in which the elector offers to vote, and giving the power to judges and officers of election, and making it their duty, in all special elections on bonds or franchises to require each elector to show by affidavit that he possesses the qualifications prescribed, the words "qualifications prescribed" deal with persons offering to vote, and a voter at an election to issue bonds to purchase a municipal water plant must be a taxpayer.

2. ELECTIONS—ARE NOT VOID BECAUSE OF THE EXCLUSION OF QUALIFIED VOTERS WITHOUT PROOF THAT RESULT WAS THEREBY CHANGED.

An election will not be held void because legal voters who offered to vote were excluded, unless it is shown that a sufficient number to have changed the result were excluded.

3. ELECTIONS—PROVISION IN CITY CHARTER THAT ELECTORS MUST BE TAXPAYERS HELD CONSTITUTIONAL.

A provision in Elko City Charter, sec. 77 (Stats. 1917, p. 171), that electors in special elections on bonds and franchises must be taxpayers, the qualification is for voting on questions involved in the proprietary or quasi private rights conferred on the city for the private benefit of itself and its inhabitants, and is not in conflict with Const. art. 2, sec. 1, providing that all citizens of the United States over the age of 21 years, and not otherwise disqualified, and who have actually resided in the state for six months and in the district or county thirty days, shall be entitled to vote for all officers and on all questions at elections.

4. ELECTIONS—CONSTITUTIONAL PROVISION AS TO QUALIFICATION OF ELECTORS APPLIES IN CITY ELECTIONS TO ALL OFFICERS AND QUESTIONS OF GOVERNMENTAL NATURE, AS DISTINGUISHED FROM THOSE OF A PROPRIETARY CHARACTER.

Const. art. 2, sec. 1, providing that all citizens of the United States over 21 years of age, and not otherwise disqualified, and who actually resided in the state for six

months and in the district or county thirty days, next preceding any election, shall be entitled to vote for all officers and on all questions submitted to the electors at such elections, applies in city elections to all officers and questions of governmental nature, as distinguished from those of a proprietary character.

5. MUNICIPAL CORPORATIONS — ORDINANCE PASSED AS EMERGENCY MEASURE IS NOT RENDERED INVALID BY FAILURE TO RECITE IN THE PREAMBLE THE FACTS CONSTITUTING EMERGENCY.

Under a city charter providing that no ordinance should be passed as an emergency measure unless reasons for passing it as such are expressed in the preamble, an ordinance is not rendered invalid by failure to recite in the preamble the facts constituting the emergency.

6. MUNICIPAL CORPORATIONS—CITY CHARTER HELD NOT TO REQUIRE AN ORDINANCE AUTHORIZING A BOND ISSUE TO GIVE TERMS, AMOUNT, RATE OF INTEREST, ETC.

Under Elko City Charter, c. 2, par. 5, sec. 30 (Stats. 1917, p. 147), providing, in case of election to issue bonds, the board shall issue a proclamation setting forth the public utility to be acquired or established, * * * the terms, amount, rate of interest, and time within which redeemable, and on what fund, it is not necessary that the ordinance authorizing the bond issue shall give the terms, amount, rate of interest, etc.

APPEAL from Fourth Judicial District Court, Elko County; *James A. Callahan,* Judge.

Suit by Ed. Carville against J. A. McBride, Mayor of the City of Elko, T. F. Brennen and others, Supervisors of the City of Elko, and the City of Elko and the Board of Supervisors thereof. From judgment sustaining defendants' demurrer to the complaint, and for defendants upon the merits, and denying a motion for a new trial, plaintiff appeals. **Affirmed.**

*Hoyt, Norcross, Thatcher, Woodburn & Henley* and *E. P. Carville,* for Appellant:

As it deprived qualified electors of the right to vote, the election was a nullity. Provisions as to the time, place and legal qualifications of electors are of the substance of the election. Hughes v. City, 182 Pac. 511. The constitutional right of suffrage is not to be taken away upon any doubtful construction of the statute. "Statutes relating to the franchise and elections should

be construed liberally in favor of the voters." Lynip
v. Buckner, 22 Nev. 439; Peters v. Sisson, 169 N. Y. S.
940; Maclean v. Brodigan, 172 Pac. 375; State v.
Christ, 179 Pac. 629; Bradley v. Cox, 197 S. W. 88;
Rice v. Board, 112 Atl. 523.

The charter, if it be construed to permit none but tax-
payers to vote at a bond election, is unconstitutional.
Const. Nev., art. 2, sec. 1. It is beyond the power of the
legislature to change the qualifications of electors as
defined by the constitution. State v. Findley, 20 Nev.
198; State ex rel. Boyle v. Board of Examiners, 21 Nev.
67; State v. Ruhe, 24 Nev. 251; In Re Walker River
Irrigation District, 39 Pac. 274.

The ordinance was declared to be an emergency ordi-
nance; but no facts were recited showing an emergency
as defined by law, and the ordinance was therefore pre-
maturely passed, and is invalid. Samuels v. City, 211
S. W. 566.

The bonds proposed by the ordinance are not respon-
sive to the question submitted at the election. The elec-
tion ballot fails to give the term of the bond, merely
stating the amount and the rate of interest. The term
of the bond and the time of redemption are not dis-
closed. Hallet v. City, 83 Pac. 1062.

*Milton B. Badt* and *James Dysart,* for Respondents:

Voters at special bond elections must be taxpayers.
The charter so provides, and defines the term "tax-
payer." Stats. 1917, p. 171. In construing statutes it
should be the purpose of the courts to carry into effect
the purpose and intent of the legislature. "Of two
admissible constructions, the courts are never justified
in adopting one which defeats the manifest object of the
statute involved." Wilkinson v. LaComb, 196 Pac. 836.
"It is the duty of the courts to keep that intention, once
it is ascertained, steadily in view, and to endeavor to
apply the law where it was intended to apply, and to
except those cases where it is not." Lynip v. Buckner,
22 Nev. 426.

Property qualifications imposed upon voters in municipal bond elections are not in contravention of the constitutional definition of the elective franchise. "A municipal corporation, such as a city, has a two-fold character; one function being governmental, in which it is the agent of the state, the other proprietary or private, for the purpose of providing local necessities and conveniences for the community." Board v. Peterson, 128 Pac. 837; 1 Dillon, Mun. Corp. (5th ed.) secs. 22, 24; 15 Cyc. 296; 20 C. J. 76; 19 R. C. L. 1170; Hannah v. Young, 84 Md. 179; Spitzer v. Fulton, 127 N. Y. 285; Mayor v. Shattuck, 34 Pac. 947; In Re Walker Irr. Dist., 195 Pac. 327; State ex rel. Lamar v. Dillon, 22 L. R. A. 124; State v. Rosenstock, 11 Nev. 128; Riter v. Douglas, 32 Nev. 400.

The ordinance was not improperly passed as an emergency ordinance. Stats. 1917, pp. 139, 144; Langdon v. City, 193 Pac. 1, 8.

The ballot sufficiently set forth the proposition to be voted for. Mere irregularities do not invalidate an election. 1 Dillon, Mun. Corp. (5th ed.) 642. "The general rule with reference to the submission of propositions is that where the ballot is free from ambiguity, neither a lack of absolute precision nor the use of surplusage will vitiate the election." 20 C. J. 150.

By the Court, COLEMAN, J.:

Appellant having been plaintiff in the court below, the parties will be referred to in this opinion as plaintiff and defendants.

On August 20, 1920, W. T. Smith, the owner of the Elko water-works, offered to sell the same to the city of Elko for the sum of $150,000. On September 30, 1920, a petition, signed by the necessary number of property owners, was filed with the board of supervisors of the city, praying that the board negotiate for the purchase of said water system. Thereafter the mayor and board of supervisors took action leading to the

acquisition of said water-works, and for the issuance and sale of the bonds of said city in the sum of $180,000, the proceeds of which were to be used in the payment of the water-works and in improving the same.

At a regular meeting of the board of supervisors, held on November 3, a petition was filed by 20 per cent of the qualified electors of the city of Elko as shown by the last preceding registration list, and representing more than 10 per cent of the taxable property in the city, as shown by the last preceding tax list or assessment roll, asking for a special election upon the question as to whether or not the proposed ordinance should become a law. The clerk of the board certified to the sufficiency of the petition and the signatures thereto attached. Upon information and belief the city board accepted the petition, and resolved to call an election on the propostion for the 4th of January, 1921. This date was later changed by resolution of the board to the 11th day of January, 1921, on which date the election was held. At such election a majority of 25 votes was cast in favor of the issuance and sale of the bonds. Thereafter the board of supervisors declared the ordinance an emergency ordinance, and passed the same.

Prior to the election, the county clerk, acting as the registry officer for the city election, registered for the election only those electors within the city of Elko who were qualified taxpayers, and whose names appeared upon the tax roll for the year 1920 or 1921. No person was permitted to register or vote at the election except qualified electors who were taxpayers within the city, and whose names appeared upon the tax rolls thereof for the year 1920 or 1921.

This action was commenced in the Fourth judicial district court, in and for the county of Elko, by plaintiff, on behalf of himself and all other persons similarly situated, to obtain an injunction restraining the defendants from proceeding to acquire a certain public utility known as the Elko Water-Works, and from issuing

bonds for the purpose of purchasing said water-works for the city of Elko and enlarging and maintaining the same.

The defendants filed both a demurrer and answer to the complaint, and the case was heard upon both the demurrer and the merits at the same time. The court sustained the demurrer, and also made findings of fact, and decided the case upon the merits in favor of the defendants. A motion for a new trial having been denied, plaintiff appealed, and urges four propositions as reasons for reversal of the judgment.

The city of Elko was incorporated by a special act of the legislature (Stats. 1917, c. 84), and its authority to issue bonds exists in pursuance thereof.

1. The first contention made is that the election is void, for the reason that qualified electors were deprived of the right to vote thereat. To sustain this position it is said that to have been a qualified elector at said election one did not have to be a taxpayer and have his name appear upon the tax roll. The determination of this question turns upon the construction of section 77 of the charter of the city of Elko (Stats. 1917, p. 171), which reads:

" 'Taxpayer' Defined—A 'taxpayer,' within the meaning of this charter, shall be construed to be and include all persons whose names appear on the official tax roll for the current or the year preceding that in which the elector offers to vote. The judges or officers of election shall have power, and it is hereby made their duty in all cases of special elections on bonds or franchises, to require of each person offering to vote thereat to show by the affidavit of such person that he possesses the qualifications prescribed; provided, that such judges or election officials may require further proofs for, as well as against, the right of any person to vote, when such right is challenged by a duly qualified elector."

What is the purpose of that portion of section 77 defining a taxpayer, if the term "qualifications pre-

scribed," as used in the last sentence, does not refer to the qualifications mentioned in the preceding sentence? Counsel for appellant say that this question is easily answered; that its purpose was to fix the qualifications of a taxpayer, because section 6, chapter 2, of the charter (Stats. 1917, p. 132) provides that the mayor and each of the four supervisors of the city, in addition to other qualifications, shall be property owners and taxpayers in the city. We are satisfied that such could not have been the intention of the legislature. Pursuant to section 6, to qualify candidates for mayor and supervisors they shall be "for at least two years immediately preceding their election residents of the city of Elko, qualified voters who are property owners and taxpayers."

Under section 77 it is essential that one offer to vote to determine the year in which his name must appear on the tax roll. If the view urged by counsel in behalf of plaintiff be correct, it is necessary that the mayor and supervisors offer to vote at the election at which they are chosen; otherwise they are not taxpayers, and hence not qualified to hold office. If through sickness, or other unavoidable cause, the officers mentioned, or any of them, fail to offer to vote at the election at which they are chosen, they would be liable to be ousted from office, if plaintiff's contention is sound, notwithstanding they had in fact been owners of extensive property interests in the city for years, upon which they had annually paid taxes, and were otherwise qualified. This we say would be the logical result of the contention presented in the circumstances mentioned.

That the interpretation contended for might lead to absurd results is obvious. This of itself is sufficient to warrant the court in looking with disfavor upon the suggested interpretation, if a logical one can be found. The sentence of section 77, alluding to "qualifications prescribed," deals with persons offering to vote, just as does the preceding sentence of the section; and to

construe the words "qualifications prescribed" as applying to those qualifications in the sentence immediately preceding would not only be reasonable, but natural, in view of the fact that those qualifications appear in the same section of the act. In fact, if the words "qualifications prescribed" do not refer to the qualifications mentioned in the sentence immediately preceding, it is impossible to ascertain to what they do refer. Hence, not only by a process of exclusion, but by one of inclusion, as well, we are inevitably led to the view that the only logical solution of the question is to hold that the words "qualifications prescribed," refer to those mentioned in section 77.

2. But we do not deem it necessary to confine ourselves to the view expressed in reaching the conclusion that the judgment should be affirmed. This court, in State v. Ruhe, 24 Nev. 251–260, 52 Pac. 276, quoted approvingly the following:

"In the American and English Encyclopedia of Law, vol. 6, p. 289, it is said: 'If a registry is had under an unconstitutional law and an election held upon the basis of such registry, there can be little, if any, doubt that the election will be held valid unless it is shown that a sufficient number of legal voters to have changed the result were prevented by such law from casting their ballot.' "

It does not appear from the pleadings, or from the findings of the trial court, that a sufficient number of legal voters, not being taxpayers, offered to vote and were denied that privilege because they were not taxpayers to change the result of the election.

Though the same principle is not involved as in those cases wherein the rule is asserted that one who is not affected by a statute cannot question its constitutionality (State v. Beck, 25 Nev. 69, 56 Pac. 1008), the same line of reasoning sustains the principle we have invoked. In the one case a person cannot attack the constitutionality of a law when his rights are not affected by it, whether

it be constitutional or unconstitutional; in the other, though his primary right to vote may have been denied, such denial resulting in no injury to him, since it does not appear that the result of the election would have been different had no one been denied the right to vote upon the ground that he was not a taxpayer, the court will not do the absurd thing of declaring the law unconstitutional.

3, 4. It is next urged that, if by section 77 of the act it was sought to require that one be a taxpayer to qualify him as a voter at an election held to pass upon the question of issuing bonds, such section is in derogation of section 1, article 2, of the Constitution of Nevada. By this section it is provided that all citizens of the United States over the age of 21 years, and not otherwise disqualified, and who have actually resided in this state for a period of six months and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers and upon all questions submitted to the electors at such elections. It is insisted that this section of the constitution guarantees to persons in the city of Elko, who on the date of the election in question possessed the qualifications mentioned, the right to vote at said election, whether or not they be taxpayers; particular stress being laid upon the provision that such persons shall be entitled to vote upon "all questions."

We think the contention not well founded. It ignores the well-recognized distinction between the governmental, or public, and the proprietary, or business, powers of a municipality, and erroneously seeks to apply to the exercise of the latter a rule which is only applicable to the exercise of the former. It is generally conceded that a city has two classes of power: The one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it not for the purpose of governing its people, but for the private

advantage of the inhabitants of the city and of the city itself as a legal entity. In the discharge of the functions of the former class, it is governed by the rule contended for by plaintiff; but in the discharge of the functions of the latter it is controlled by no such rule, for the obvious reason that it is acting and contracting for the private benefit of the city itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise be governed by the same rules, that govern a private individual or corporation. This idea is tersely expressed by the Supreme Court of Oregon in Board of Directors v. Peterson, 64 Or. 52, 128 Pac. 839, as follows:

"A municipal corporation, such as a city, has a twofold character; one function being governmental, in which it is the agent of the state, the other proprietary, or private, for the purpose of providing local necessities and conveniences for the community."

The rule which we have stated is well recognized, approved by the text-writers, and supported by the overwhelming weight of authority. It is said:

"In the United States, at least, the institution of municipal corporations is based upon the idea of local self-government by popular representation. Municipal corporations are of a twofold character: The one public as regards the state at large in so far as they are its agents in government; the other private in so far as they are to provide local necessities and conveniences for their own communities. * * * In its proprietary character the theory is that the powers are not conferred chiefly from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual. With reference to the former class of powers, the municipality represents the general government, and its rights and responsibilities are determined accordingly. As to the latter class, the corporation's rights and liabilities are governed by the same rules which control those of

private corporations or individuals." 20 Am. & Eng. Ency. Law (2d ed.) 1131.

See, also, 15 Cyc. 296; 28 Cyc. 125; 20 C. J. 76.

That brilliant author, Judge Dillon, who, not only by his judicial utterances, but as well by his contributions to the legal classics of the land, has made an enduring place for himself as one whose utterances are not only persuasive, but most convincing, says:

"It assists to an understanding of the extent of legislative power over municipal corporations proper (incorporated towns and cities) to observe that these, as ordinarily constituted, possess according to the adjudications a double character: The one governmental, legislative, or public; the other, in a sense, proprietary or private. The distinction between these, though sometimes, indeed very often, difficult to trace, is highly important, and is frequently referred to, particularly in the cases relating to the property and to the implied or common-law liability of municipal corporations for the negligence of their servants, agents, or officers in the execution of corporate duties and powers. On this distinction, indeed, rests the doctrine of such implied liability. In its governmental or public character, the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself. In this respect it is assimilated, in its nature and functions, to a county corporation, which, as we have seen, is purely part of the governmental machinery of the sovereignty which creates it. Over all its civil, political, or governmental powers, the authority of the legislature is, in the nature of things, supreme, and without limitation, unless the limitation is found in the constitution of the particular state. But, in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the state at large, but for the private advantage of the compact community which

is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded quo ad hoc as a private corporation, or at least not public in the sense that the power of the legislature over it or the rights represented by it, is omnipotent." 1 Dillon, Mun. Corp. (5th ed.) sec. 109.

In keeping with the views indicated, it has been held that the constitutional provision in question has reference to all officers and questions of a governmental nature, as distinguished from those of a proprietary character. This view was adopted by this court in In Re Walker River Irr. Dist., 44 Nev. 321, 195 Pac. 327, wherein it is said:

"By the weight of authority, the term 'all officers' and questions submitted to the electors at such election, as used in section 1, article 2, has reference to the election of all officers provided for in the constitution."

The view thus enunciated is in keeping, not only with the soundest reasoning, but with the great weight of authority. This question is considered at length in Mayor of Valverde v. Shattuck, 19 Colo. 104, 34 Pac. 947, 41 Am. St. Rep. 208, where the conclusions which we have reached find support.

See, also, Spitzer v. Fulton, 172 N. Y. 285, 64 N. E. 957, 92 Am. St. Rep. 736; Hannah v. Young, 84 Md. 179, 35 Atl. 674, 34 L. R. A. 55, 57 Am. St. Rep. 396.

It would seem useless to pursue this inquiry further, for the reason, as stated in response to the first objection to the statute, that it does not appear from the pleadings, the findings, or otherwise, that a sufficient number of legal voters, not being taxpayers, offered to vote at the election in question, and were denied that privilege upon the ground that they were not taxpayers, to change the result of the election. State v. Ruhe, supra.

5. It is said, too, that the ordinance is void since no facts are recited constituting an emergency as defined by law. The charter of the city of Elko provides:

"No ordinance shall be passed as an emergency measure unless reasons for passing it as such are expressed in the preamble."

Plaintiff, to sustain his contention, relies simply upon the authority of Samuels v. City of Clinton, 184 Ky. 97, 211 S. W. 567, 568. We may say, in the first place, that the charter of the city of Elko does not require that "facts" be recited in the preamble, but that the "reasons" moving the board of supervisors to act be recited. There is a wide distinction between the requirement of the recital of "facts" and of reasons. While no facts were recited in the preamble, there is nothing to require it. On the other hand, the preamble does recite the reasons moving the board of supervisors to act as it did, and it is not asserted that the reasons given are not good reasons. Furthermore, in the case relied upon by plaintiff, the court looked into the facts, and did determine that an emergency did exist for the purchase of the water-works. We do not pretend to determine whether the court had authority to inquire into the sufficiency of the reasons moving the board of supervisors to declare an emergency existing for the passage of the ordinance, for, in any event, we are bound to hold against the plaintiff in this case, for the reason that the trial court expressly found that the ordinance was an emergency measure, and that sufficient circumstances did exist to justify the passage and adoption of said ordinance as an emergency measure. It is not contended before us that this finding is not sustained by the evidence. We are satisfied that the contention on this point is utterly without foundation.

6. It is likewise said that the election is void for the reason that the charter of the city provides that the ordinance authorizing a bond issue shall give the "terms, amount, rate of interest, and time within which redeemable and on what fund." We do not so read the charter. Looking to paragraph 5, section 30, chapter 2, of the charter (Stats. 1917, p. 147), we find its reads:

"The board shall issue a proclamation which shall

set forth briefly the public utility proposed to be acquired or established, * * * the proposed bonded indebtedness to be incurred therefor; the terms, amount, rate of interest, and time within which redeemable and on what fund."

It will be seen that there is a wide difference between what the statute in fact requires and what it is contended it requires. This should dispose of this ground for reversal; but we may say that the trial court expressly found that the board of.supervisors had complied with the section of the charter mentioned and issued a proclamation in compliance therewith. This finding is not attacked here.

For the reasons given, the judgment is affirmed.