# HARD *v.* DEPAOLI ET AL.

No. 3101

March 4, 1935.                    41 P. (2d) 1054.

*Painter, Withers & Edwards,* for Relator:

*Melvin E. Jepson* and *A. P. Johnson,* for Respondents:

# OPINION

By the Court, HAWKINS, District Judge:

This is an original proceeding in mandamus to compel respondents to proceed with the sale of school bonds, in an amount of $17,000, of Wadsworth school district No. 11, Washoe County, Nevada, for the purpose of obtaining money with which to construct an addition to its high school building, install a heating system therein, and make alterations and repairs to said building, in conformity with the resolution of said school district authorizing the issuance of said bonds, passed, adopted, and approved by the board of trustees of said school district on December 13, 1934.

The matter is before the court upon the petition of relator, Giles C. Hard, and the answer of respondents, M. P. Depaoli, president; W. C. Ceresola, clerk; and Joseph Garaventa, member of the board of trustees of Wadsworth school district No. 11, Washoe County, Nevada.

It is alleged in the petition, and admitted by the answer, that relator is, and at all times mentioned in the petition was, a citizen, resident, and taxpayer of Wadsworth school district No. 11, Washoe County, Nevada; that Wadsworth school district No. 11 is a school district duly formed on the 7th day of June, 1869, and has all the powers which are now or which

may hereafter be conferred upon school districts by the laws of the State of Nevada, and particularly that certain act approved March 20, 1911 (Nevada Compiled Laws, secs. 5725 to 5749, and secs. 5836 to 5848) ; that said school district has complied with all laws and statutes pertaining to its organization and existence, and now is and at all times in said petition mentioned was a body politic within the said county of Washoe, State of Nevada; that M. P. Depaoli, W. J. Ceresola, and Joseph Garaventa now are, and at all times in said petition mentioned were, the duly elected, qualified, and acting members of the board of trustees of said school district, the said M. P. Depaoli being president and the said W. J. Ceresola clerk of said board; that in conformity with the provisions of section 5837 Nevada Compiled Laws, the board of trustees of said school district, on the 1st day of November, 1934, at a special meeting, passed a resolution declaring it necessary to incur indebtedness by issuing negotiable coupon bonds of said district in the sum of $17,000, and caused to be executed a certificate of determination, which was duly entered in the records of said school district; that thereafter on said day the said board, by resolution duly made and entered on the records of said district, resolved that the question of contracting such bonded indebtedness be submitted to the duly qualified electors of said district at a special election to be held in conformity with chapter 95, Statutes of Nevada 1933, and did by said resolution provide the statutory machinery for holding said election; that in accordance with the statutes of this state, said resolutions, and as required by chapter 95, Statutes of Nevada 1933, a special election was held for the purpose of voting upon the resolution authorizing the issuance of said bonds; that said resolution was duly passed at said election; that thereafter, and in accordance with the statutes of Nevada, at a special meeting held on the 13th day of December, 1934, the board of trustees of said district passed a resolution providing for the issuance of said bonds, the levying of a special tax for the payment

thereof, the publishing and posting of notices calling for bidders for the purchase of said bonds, the form of such notice, when the bids would be considered by said board, for the manner of submission of said bids, for the rejection of any and all of said bids by the said board, that a notice of sale of said bonds be mailed at least three weeks prior to January 7, 1935, to the state board of finance, and for other matters in relation to the issuance and sale of said bonds; that in conformity with such resolution notice of sale of said bonds was duly published as required by law in the Reno Evening Gazette, was duly posted by the clerk of said board of trustees in four public places in said school district, and mailed, as required by law; that all of said proceedings of the said board of trustees were in strict accordance with all statutes and laws of the State of Nevada governing and controlling in such matters, and that said election was called, noticed, and held in conformity with the provisions of chapter 95, Statutes of 1933.

It also further appears from the pleadings that under the statutes of Nevada, as set forth in Nevada Compiled Laws, sec. 5839, and chapter 95, Statutes of 1933, it is mandatory that the board of school trustees shall, in the event the official determination of the election upon a bond issue is "for the bonds," as soon as practicable proceed to the sale and issuance of said bonds. But notwithstanding said statutes, the board of school trustees, at a special meeting held on the 5th day of January, 1935, passed a resolution refusing to proceed further with the sale of said bonds because of legal advice that the procedure taken for the issuance and sale of said bonds under the provisions of said chapter 95, Statutes of 1933, was unconstitutional, and by reason thereof no one would purchase the said bonds. It also further appears from the answer that unless required by this court respondents will proceed no further with the sale of said bonds or the construction of said contemplated improvements.

Respondents contend that chapter 95, Statutes of

1933, is unconstitutional because it is in conflict with and violates the provisions of sections 1 and 6, article 2, of the Nevada constitution.

■■ This court has heretofore frequently held that all acts passed by the legislature are presumed to be valid until the contrary is clearly established, and we begin consideration of the act now before the court with that presumption in mind. The authority of the legislature to pass such laws as it considers advisable is unlimited, except as restricted by the constitution of the United States and federal laws enacted pursuant thereto, or by our state constitution.

It is not contended in this proceeding that the act now before the court conflicts with any provision of the constitution of the United States or is prohibited by federal law; hence the presumption that there is no such conflict will prevail. Thus it is only necessary to determine whether chapter 95, Statutes of 1933, is in conflict with the provisions of the constitution of Nevada as contained in sections 1 and 6, article 2, therein. Chapter 95, Statutes of 1933, provides, in section 2 thereof, that: "Whenever the State of Nevada, or any municipality therein, proposes to issue bonds, or provide for loans, in any amount within the limit of indebtedness authorized by the constitution, the proposal for such bond issue or loan shall be submitted at a general or special election called for that purpose, to the electors of the state or the municipality involved who are not real property owners or the spouses of real property owners, and also to the electors thereof who are the owners of real property or the spouses of real estate property owners, as shown by the assessment roll of some one or more of the counties in the state, or the spouses of such real property owners in the manner hereinafter set forth."

The act further provides that at such elections two ballot boxes must be provided, one of which shall be designated as ballot box A and the other ballot box B; that two sets of ballots, one of which shall be printed

on white paper and the other on colored paper, containing the same statements, shall be provided for the use of the voters at said election; that every citizen of the United States of the age of twenty-one years and upward who has resided in the state six months and in the county thirty days next preceding such election, and who has complied with the registration laws of this state shall be entitled to vote at said election; that if such elector is not the owner of or the spouse of the owner of real property assessed on the assessment roll of any county of the state, in the case of a state bond election, or on the assessment roll of the municipality, in the case of a municipal bond election, he shall be furnished a ballot printed on white paper, and the ballots of such persons shall be deposited in ballot box A; that if said elector is the owner or the spouse of the owner of real property so assessed, he shall be furnished a ballot printed on colored paper, and the ballots of all such persons shall be deposited in ballot box B. It is further provided that at the close of the election the ballots in the two boxes be separately canvassed and the results certified to the authorities proposing the bond issue, and if a majority of the ballots in each box is in favor of the issuance of the bonds then such bonds shall have carried, and the proper officers shall proceed to print, execute, advertise, and sell said bonds; but if the majority of ballots in either of said boxes is against the issuance of said bonds the proposal to issue said bonds shall have failed and no further proceedings be had toward the printing, execution, advertisement, or sale of said bonds.

Section 1 of article 2 of the constitution of the State of Nevada is as follows: "All citizens of the United States (not laboring under the disabilities named in this constitution) of the age of twenty-one years and upwards, who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now or hereafter may be

elected by the people, and upon all questions submitted to the electors at such election; provided.  *  *  * There shall be no denial of the elective franchise at any election on account of sex."

That section was interpreted in the case of In re Walker River Irr. Dist., 44 Nev. 321, 195 P. 327, 332. And it was therein stated: "We are of the opinion that it is only at elections which the constitution itself requires to be held, and officers to be voted for as named in the instrument or created by the legislature as officers necessary in exercising the functions of the government in running the machinery of the state, that section 1, art. 2, applies."

It was also held in the same case that the term "elections," embraced in section 1, article 2, was there used in its restrictive political sense—as election of public officers and to determine the will of the people upon questions in which they have a public as distinguished from an immediate private interest.

The same section was again considered by this court in the case of Carville v. McBride, 45 Nev. 305, 202 P. 802, where one question determined was whether section 77 of the charter of the city of Elko. (Stats. 1917, p. 171), limiting those entitled to vote in all cases of elections held upon the question of passing upon the issuing of bonds, was in derogation of section 1, article 2, of the Nevada constitution. In that case the court held those provisions of the charter were not in derogation of said section of the constitution, because such section only controlled the city in the exercise of its legislative, public, and governmental powers, in the exercise of which it is a sovereignty, and did not apply to or control it in the exercise of its proprietary, quasi private powers; the exercise of such powers being governed by the same rules that govern a private individual or corporation.

Section 24 of article 1 and section 1 of article 2 of the constitution of the State of California are similar in their wording and legal effect to the provisions of section 1, article 2, of the constitution of Nevada. The

supreme court of the State of California, in the cases of Wheeler v. Herbert, 152 Cal. 224, 92 P. 353, and Tarpey v. McClure, 190 Cal. 593, 213 P. 983, interpreted the meaning of said sections of the California constitution, and held they refer only to the qualification of electors entitling them to vote at the ordinary elections, local and general, held in the course of the usual functions of civil government.

Chapter 95, Nevada Statutes of 1933, is almost a verbatim copy of chapter 52, Session Laws 1931, of the State of Wyoming, which was before the supreme court of that state in the case of State ex rel. Voiles v. Johnson County High School, reported in 43 Wyo. 494, 5 P. (2d) 255, 262. It was contended in the Wyoming case the law was in conflict with several provisions contained in the constitution of that state, one of which, to wit, section 2 of article 6, so far as material in this proceeding, is the same as section 1, article 2, of the constitution of Nevada.

Section 4 of article 16 of the constitution of Wyoming directs: "No debt in excess of the taxes for the current year shall, in any manner, be created by any county or subdivision thereof, or any city, town or village, or any subdivision thereof in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

In determining whether the act (chapter 52, Laws 1931) was inimical to said section 2, article 6, or contravened the requirements of section 4, article 16, of the constitution, the supreme court of Wyoming used the following language: "In the light of the authorities hereinabove cited, we see no limitation either express or implied placed upon the power of the legislature of this state by the provisions of either section 2 of article 6, or section 4 of article 16, of our constitution, to enact such a law as we have seen chapter 52, Laws of Wyoming 1931, to be."

Differences between the Nevada law before this court and the Wyoming law construed in the case just referred to are that the words "or provide for loans,"

found at line 2 of section 2 of the Nevada statute are not in the Wyoming statute, and the words "owners of real property" are used throughout the Nevada law in lieu of the words "property owners" found in the Wyoming law. In view of the great similarity between the statutes and the dates of their respective enactments, it is probable our law was an adoption of the Wyoming law; which raises the presumption that the legislature of Nevada enacted our law in the light of the construction that had been placed upon it by the supreme court of Wyoming in the Voiles-Johnson County High School case, decided more than a year prior to the passage of the Nevada law. O'Brien v. Board of Commissioners, 41 Nev. 90, 91, 167 P. 1007.

■ The construction given to the Wyoming statute by the supreme court of that state, in the case hereinbefore cited, while not conclusive on this court is nevertheless very persuasive. Menteberry v. Giacometto, 51 Nev. 7, 267 P. 49.

■ While it is required under the provisions of section 2, article 11, of the constitution that the legislature provide for a uniform system of common schools, by which a school shall be established and maintained in each school district at least six months in every year, yet such school districts are creatures of legislative acts. By those acts they are brought into existence as political subdivisions of the state, formed for the purpose of aiding in the exercise of that governmental function which relates to the education of children; their functions defined, and such powers as they may exercise conferred upon them. They have no inherent right to vote bonds or negotiate loans; such right must be derived from statute, and in voting such bonds or providing for such loans, the statute must be substantially complied with.

In the exercise of the authority granted such school districts by law to submit a proposal to issue bonds to a vote of the qualified electors within said municipality at an election to be held for that purpose, and the voting upon said proposal by said qualified electors, the school

district is not conducting an election which the constitution itself requires to be held, or voting for officers named in the constitution, or created by the legislature as officers necessary in exercising functions of the government in running the machinery of the state.

■ The effect of voting and issuing bonds by such district is to increase the taxes upon all assessable property of the district for the payment of the bonds and interest. The legislature has considered it advisable to require that before such added burden shall be assumed, a majority of the owners of and the spouses of the owners of real property subject to taxation within such district shall express their approval thereof, as well as must a majority of all other qualified electors in said district. We are not prepared to hold such requirement exceeded the powers of the legislature, or that its division of the qualified electors into the classes, provided by the law, is unreasonable or unjust; every qualified voter being granted the privilege of expressing his wishes upon the question, and each vote cast having equal weight in determining the will of those voting upon the question.

■ Section 6 of article 2 of the constitution has no application under the facts as shown by the pleadings in this proceeding. However, there is no conflict between the provisions of that section and the law under consideration.

■ We are of the opinion that chapter 95, Statutes of 1933 of the State of Nevada, is not in conflict with or prohibited by either section 1 or section 6 of article 2 of the constitution of this state.

That conclusion disposes of all the grounds relied upon by respondents in their answer and argument before the court at the hearing on the return to the alternative writ, but because the constitutionality of the law has heretofore been assailed in former proceedings before this court, upon other grounds, and may hereafter again be questioned, it is deemed advisable to consider whether such law is prohibited by any provision of our constitution.

■ A consideration of section 1 of article 3 and section 1 of article 4 of the constitution discloses that neither of those sections was violated by the passage of the act now before the court.

■ Sections 20 and 21 of article 4 of the constitution will be considered together. Section 20 prohibits the passage by the legislature of local or special laws in certain enumerated cases, and section 21 provides that in all the cases enumerated in section 20, as well as in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state.

If the act under consideration may be considered of a class wherein the legislature is prohibited by section 20 from passing local or special laws, such act is neither a "local" nor a "special" law, because it operates over the whole state, and equally upon all within the classes into which it divides the qualified electors. State v. Irwin, 5 Nev. 111; State ex rel. Voiles v. Johnson County High School, supra.

■ For the foregoing reasons, and upon the authority of the cases heretofore cited, we are of the opinion such law is not obnoxious to, nor is it prohibited by section 1 or section 8 of article 8 of the constitution.

■ Section 14 of article 15 of the constitution provides: "A plurality of votes given at an election by the people shall constitute a choice, where not otherwise provided by this constitution."

Section 14 of article 15 of our constitution complements section 1, article 2, thereof, and does not apply to elections such as are required by chapter 95, Statutes of 1933.

■ Section 3 of article 19 of the constitution reserves to the people the right, at their option, to approve or reject at the polls any act, part of an act, or measure passed by the legislature; which power of referendum is also reserved to the electors of each county and municipality as to all local, special, and municipal legislation in or for said respective counties or municipalities.

Chapter 95, Statutes of 1933, merely goes further

than the referendum provision of that section of the constitution, and provides that in the matter of the issuance of bonds, as well as in negotiating loans, a referendum must be held upon the act, ordinance, or resolution authorizing the issuance of said bonds or the negotiation of said loans.

Not only is such referendum not prohibited by said section of the constitution, but is expressly authorized therein.

Since the legislature may enact any law not prohibited by the constitution of the United States and federal laws passed in conformity therewith, or by the constitution of this state, and there is no provision in either prohibiting such a law as chapter 95, Statutes of 1933, that act is constitutional.

Petitioner is entitled to a peremptory writ of mandate directed to respondents and requiring them to proceed as prayed for in his petition.

Let the writ issue as prayed for.

DUCKER, C. J.: I concur.

COLEMAN, J.: I concur in the order.

NOTE—TABER, J., being disqualified from participating in this opinion, the Governor designated Hon. L. O. HAWKINS, Judge of the Sixth Judicial District Court, to sit in his place.